# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent, ) | |
| ) | |
| vs. ) | Case No. 18 C 6682 |
| ) | |
| ROBERT DEKELAITA, ) | |
| ) | |
| Movant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In May 2016, a jury found Robert DeKelaita, a lawyer concentrating his practice in immigration law, guilty of one count of conspiracy to commit asylum fraud and three counts of making false statements on asylum applications. After trial, DeKelaita moved for a judgment of acquittal, a motion the Court granted with respect to the false statement counts but not the conspiracy count. DeKelaita now moves under 28 U.S.C. § 2255 to set aside his conviction and sentence on the conspiracy charge. He contends that (1) critical witnesses received undisclosed benefits for their testimony, (2) certain inadmissible hearsay was improperly admitted into evidence, and (3) subsequent developments disprove the existence of a conspiracy. For the reasons below, the Court overrules DeKelaita's second and third claims but orders an evidentiary hearing under 28 U.S.C. § 2255(b) on his claim regarding undisclosed witness benefits.

## Background

Robert DeKelaita worked as an attorney specializing in immigration law. He focused a significant portion of his practice on assisting Assyrian or Chaldean Christians

from Muslim-majority countries in applying for asylum protection in the United States. Some of the applicants he assisted likely were not eligible for asylum, however, and between 2000 and 2009 DeKelaita engineered and executed a scheme whereby he and his colleagues—interpreters and associate attorneys—fabricated evidence to support the asylum applications.

In September 2014, after several years of investigation, DeKelaita was charged with several offenses related to asylum fraud. Two superseding indictments followed, the second of which, filed in August 2015, alleged one count of conspiracy to commit asylum fraud, six counts of making false statements on asylum applications, and one count of conspiracy to commit marriage fraud. After the Court denied DeKelaita's motion to dismiss, the case went to trial on April 19, 2016. At the close of evidence on May 6, the prosecution moved to voluntarily dismiss three of the false statement counts (counts 2, 3, and 4). The jury deliberated on the remaining counts.

On May 9, the jury returned a unanimous verdict of guilty with respect to the asylum conspiracy count (1) and the remaining false statements counts (5, 6, and 7), and a verdict of not guilty as to the marriage fraud conspiracy count (8). On the false statements counts, the jury made specific findings regarding which statements the government had proven were knowingly false. DeKelaita moved for a judgment of acquittal or for a new trial with respect to the counts on which he was convicted. The Court granted the motion for judgment of acquittal on the false statement counts because the false statements the jury found DeKelaita had made were not material and thus were insufficient to support a conviction. *See United States v. DeKelaita* (*DeKelaita I*), No. 14 CR 497, 2017 WL 7788175, at *7 (N.D. Ill. Feb. 17, 2017). The

Court denied DeKelaita's motion with respect to the conspiracy count. *See id.*

DeKelaita appealed, arguing in his briefs to the Seventh Circuit that there was insufficient evidence to support his conviction for conspiracy. Specifically, he argued that there was no evidence of a single overarching conspiracy to commit asylum fraud but rather, if anything, a series of smaller conspiracies involving each specific fraudulent application. The Seventh Circuit affirmed the conviction, reasoning that this distinction was inconsequential because, whether there was a single conspiracy or a number of hub-and-spoke conspiracies, DeKelaita was indisputably the hub and therefore criminally responsible. *See United States v. DeKelaita* (*DeKelaita II*), 875 F.3d 855, 858 (7th Cir. 2017).

DeKelaita now moves under 28 U.S.C. § 2255 to set aside his conviction and sentence.

**Discussion**

Under 28 U.S.C. § 2255, a court may vacate, set aside, or correct a sentence imposed in violation of the laws of the United States or otherwise subject to collateral attack. 28 U.S.C. § 2255(a). But such relief is appropriate "only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently resulted in the complete miscarriage of justice." *Harris v. United States*, 366 F.3d 592, 594 (7th Cir. 2004) (internal quotation marks omitted). And a court may grant relief under section 2255 only when a movant is "in custody." 28 U.S.C. § 2255(a).

At the threshold, the government suggests that this motion is moot because DeKelaita was released from Bureau of Prisons confinement in February 2019 and is therefore no longer in custody. That contention is contrary to controlling authority. First,

3

"custody" is construed broadly for the purposes of section 2255 to include terms of bond or supervised release. *See Virsnieks v. Smith*, 521 F.3d 707, 717-18 (7th Cir. 2008). DeKelaita is subject to one year of supervised release following the end of his prison term, meaning that he will remain in custody for the purposes of the statute until February 2020. Moreover, even if DeKelaita were not currently serving a term of supervised release, the motion would nevertheless satisfy the "custody" requirement because that determination relates back to the date on which the motion was filed. *See Spencer v. Kemna*, 523 U.S. 1, 6 (1998) (holding, in the analogous context of section 2254, that the habeas corpus applicant "was incarcerated . . . at the time the petition was filed, which is all the 'in custody' provision . . . requires"); *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (holding, under section 2255, that the movant "was in custody when he filed the motion, and that is all that is required to be 'in custody' under the statute"); *see also Maleng v. Cook*, 490 U.S. 488, 490-91 (1989) (per curiam); *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968); *Ryan v. United States*, 688 F.3d 845, 848 (7th Cir. 2012); *United States v. Payne*, 741 F.2d 887, 890 (7th Cir. 1984); *Gates v. United States*, 515 F.2d 73, 76 (7th Cir. 1975). DeKelaita filed this motion on October 1, 2018, when he was undisputedly still imprisoned. The Court therefore overrules the government's mootness argument.

DeKelaita's motion includes three bases for relief. First, he argues that several of the prosecution's key witnesses were conferred benefits for their testimony that were undisclosed to the defense or the jury in violation of his constitutional rights. Second, DeKelaita argues that inadmissible hearsay testimony was improperly presented to the jury and, in passing, that his attorney was constitutionally deficient for failing to object to

the evidence. Third, he contends that the two attorneys with whom the jury found he conspired to commit asylum fraud have not been subject to professional discipline in relation to the conspiracy and argues that this conclusively refutes the conspiracy's existence.

A.   **Undisclosed witness benefits**

DeKelaita contends that a number of witnesses who testified at his trial were promised benefits in exchange for their testimony that were improperly concealed from him, his counsel, and the jury. Specifically, he points to three of his former clients— Rafal Khizme, Nahal Najam, and Hilal Albqal—who he says admitted during their testimony to committing asylum fraud but then faced no consequences. DeKelaita notes that under the asylum statute, a migrant who has been found by immigration authorities to have "knowingly made a frivolous application for asylum . . . shall be permanently ineligible for any [immigration] benefits." 28 U.S.C. § 1158(d); *see also Pavlov v. Holder*, 697 F.3d 616, 617-18 (7th Cir. 2012). DeKelaita contends that the fact that Khizme, Najam, and Albqal effectively admitted during their testimony to having made fraudulent asylum applications but have been allowed to remain in the United States indicates that the prosecution (expressly or perhaps implicitly) offered them undisclosed benefits in exchange for their testimony. Indeed, by DeKelaita's accounting, Khizme was already in removal proceedings at the time of her testimony in this case, but those proceedings were later administratively terminated. This, he contends, strongly supports an inference of an undisclosed quid pro quo.

Although DeKelaita does not expressly make the connection, the Court construes his claims as arising under the Fifth Amendment and the Supreme Court's rulings in

*Napue v. Illinois*, 360 U.S. 264 (1959), *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). In *Napue*, the Supreme Court held that it is a violation of the Due Process Clause for the government to solicit or permit false evidence to be presented to the jury—even if the evidence "goes only to the credibility of the witness." *See Napue*, 360 U.S. at 269; *see also United States v. Cosby*, 924 F.3d 329, 336 (7th Cir. 2019) (stating the applicable standard). *Brady*, in turn, stands for the proposition that the government's failure to make available "evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. In *Giglio*, the Supreme Court extended *Brady* to circumstances where the government promises benefits to a witness but fails to disclose those benefits to opposing counsel or the jury. *See Giglio*, 405 U.S. at 154-55; *see also Abbott v. United States*, 195 F.3d 946, 948 (7th Cir. 1999) (stating the applicable standard).

The government first argues that DeKelaita's claim is procedurally defaulted because "claims cannot be raised for the first time in a § 2255 motion if they could have been raised . . . on direct appeal." *Sandoval v. United States*, 574 F.3d 847, 950-51 (7th Cir. 2009). The government contends that the relevant witnesses' biases were subject to extensive cross-examination at trial and that DeKelaita thus could have made this argument during his direct appeal but simply neglected to. DeKelaita counters that the passage of time has been key to assessing whether an improper benefit was conferred on the witnesses and that the claim was therefore not yet appropriate for argument on direct appeal.

The Court concludes that an evidentiary hearing is warranted. "A hearing is

required unless the record conclusively shows that the movant is not entitled to relief." *Hicks v. United States*, 886 F.3d 648, 650 (7th Cir. 2018); 8 U.S.C. § 2255(b). DeKelaita has articulated a plausible basis for his contention that government witnesses were promised (and received) benefits that were not disclosed to the defense or the jury, and that contention is not conclusively rebutted by record evidence. Because DeKelaita's claim are not conclusively rebutted, he is entitled to an evidentiary hearing. *See* 28 U.S.C. § 2255(b). Indeed, even the government's procedural default argument rests on questions of who knew what when, the answers to which are beyond the current record.

The government also argues that DeKelaita has presented insufficient evidence of the alleged undisclosed benefits to warrant relief. That argument is premature. At this stage he must merely articulate a non-conclusory basis for relief that is not conclusively foreclosed. *See Sawyer v. United States*, 874 F.3d 276, 279 (7th Cir. 2017). He has done so. Several witnesses who admitted under oath to participating in the knowing presentation of numerous false statements in asylum applications and interviews and, in one case, in a hearing before an immigration judge evidently have been permitted, despite this, to remain in the United States. An inference that this could occur only with assistance from the government is certainly plausible. This, in turn, is sufficient to make it plausible that the witnesses were promised, at least implicitly, some benefit for their assistance to the government and/or their testimony. And if such a benefit was not disclosed, it would have violated DeKelaita's constitutional rights. He is therefore entitled to an evidentiary hearing on this claim.

Finally, the government argues that DeKelaita's claim lacks merit because he

had a constitutionally sufficient opportunity to cross-examine the witnesses at trial. In support, the government points to the Seventh Circuit's ruling in *United States v. Ward* that "the sufficiency of cross-examination turns on whether the jury had sufficient information to make a discriminating appraisal of the witness' motive and bias." *United States v. Ward*, 211 F.3d 356, 363 (7th Cir. 2000) (internal quotation marks omitted). But the government's argument on the merits of DeKelaita's claim misunderstands his contentions. DeKelaita does not argue that he was given an insufficient opportunity to cross-examine the witnesses in violation of Confrontation Clause. Rather, DeKelaita has alleged that the government promised immigration benefits to certain key witnesses, and that this information was withheld from him, his counsel, and the jury in violation of the Fifth Amendment. The government's citation to the *Ward* standard is thus inapposite.

      B.     **"Hearsay" evidence and ineffective assistance of counsel**

Next, DeKelaita argues that his convictions should be set aside because the jury was permitted to consider hearsay evidence that violated the Sixth Amendment's Confrontation Clause. *See generally Crawford v. Washington*, 541 U.S. 36 (2004) (stating the applicable standard). He takes issue with recordings made by Fadhil Rasho—a confidential informant who cooperated with investigators—parts of which were played during trial despite Fasho's unavailability for cross-examination. DeKelaita also seems to suggest in his reply that his attorney's failure to object to the introduction of the recordings constituted ineffective assistance of counsel. *See United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011).

This claim is procedurally defaulted to the extent that DeKelaita is directly

challenging the admission of evidence. As noted above, "claims cannot be raised for the first time in a § 2255 motion if they could have been raised . . . on direct appeal." *Sandoval*, 574 F.3d at 950-51. DeKelaita appealed parts of the Court's post-trial rulings to the Seventh Circuit. *See DeKelaita II*, 875 F.3d at 858. He does not and cannot articulate how or why this claim was not available to him in his original appeal; after all, the recordings were played (and the corresponding alleged failure by counsel occurred) at trial, and thus the basis for a challenge was fully available to DeKelaita on appeal.

The default is not excused by the purported ineffective assistance of DeKelaita's counsel. To establish ineffective assistance, DeKelaita "must show both that his attorney's performance was objectively deficient—in other words, that it fell outside the wide range of competent representation—and that he was prejudiced by the subpar representation." *Jones*, 635 F.3d at 915 (citing *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984)); *see also Murray v. Carrier*, 477 U.S. 478, 488 (1986) (holding that the *Strickland* standard applies when assessing cause and prejudice for the purposes of procedural default).

DeKelaita's attorney's failure to object to the Rasho recordings on Confrontation Clause grounds does not meet the objective deficiency requirement. Admitting a witness's out-of-court statements does not violate the Confrontation Clause when those statements are offered for non-hearsay purposes. *See United States v. Amaya*, 828 F.3d 518, 528 (7th Cir. 2016) (internal quotation marks omitted); *see also United States v. Foster*, 701 F.3d 1142, 1150 (7th Cir. 2012) (internal quotation marks omitted). The recording excerpts in question were appropriately admitted (1) to provide context for other undisputedly admissible evidence in the record, *see United States v. Norton*, 893

F.3d 464, 467 (7th Cir. 2018); (2) under a hearsay exception for co-conspirator declarations, *see United States v. Hargrove*, 508 F.3d 445, 448-49 (7th Cir. 2007); and/or (3) for another purpose besides establishing the truth of the matter asserted, *see United States v. Gayton*, 648 F.3d 573, 576 (7th Cir. 2011). Because none of the recordings admitted into evidence was hearsay, there was no Confrontation Clause problem created by their admission. *See Amaya*, 828 F.3d at 528. An attorney's failure to make a baseless objection cannot support a claim for ineffective assistance of counsel. *See United States v. Rezin*, 322 F.3d 443, 446 (7th Cir. 2003), *overruled on other grounds by Lockhart v. United States*, 136 S. Ct. 958 (2016).

For these reasons, the Court overrules DeKelaita's second claim.

## C. Non-discipline of co-conspirators

Finally, DeKelaita also argues that his conspiracy conviction should be overturned because the associate attorneys with whom the jury found he had conspired to commit asylum fraud have not been prosecuted or disciplined by state or federal regulators. He places special emphasis on the Illinois Attorney Registration and Disciplinary Commission's (ARDC) failure to discipline the two lawyers for their roles. DeKelaita contends that that this absence of disciplinary consequences constitutes new evidence refuting the existence of any conspiracy to commit asylum fraud.

The government contends that this claim is foreclosed because a version of it was raised and rejected on direct appeal. *See Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995). That is, "although DeKelaita's focus [here] is slightly different from his focus on appeal, the challenge is the same—that the evidence purportedly was insufficient to establish the conspiracy of which he was convicted." Gov.'s Resp., dkt.

10

no. 5, at 11.

Even assuming DeKelaita's claim is not foreclosed for repeating arguments rejected on direct appeal, it lacks merit. First, DeKelaita has not persuaded the Court that the failure of the ARDC or any other regulator to discipline his co-conspirators constitutes evidence that no conspiracy ever existed. "Attorney discipline in Illinois is a multi-step process," involving several different decisionmakers with significant discretion. *See Matter of Jafree*, 759 F.3d 604, 607 n.4 (7th Cir. 1985); Ill. Sup. Ct. Rs. 751-754. The Court sees no basis to infer from the fact this process did not result in discipline for DeKelaita's co-conspirators that there was no conspiracy in the first place; that is too large an inferential leap.

And even were the Court to accept DeKelaita's argument that the ARDC's failure to discipline his attorney co-conspirators indicated that those attorneys were not involved in the conspiracy, his claim would still lack merit. Critically, both this Court and the Seventh Circuit noted in previous rulings that the jury found a conspiracy that included not just DeKelaita and associate attorneys, but also two translators who were in on the scheme. *See DeKelaita I*, 2018 WL 7788175, at *3 ("[T]he jury reasonably could infer the existence of a common objective from the evidence regarding similar means and methods that DeKelaita, the translators, and (later) associate attorneys used in the various clients' cases."); *DeKelaita II*, 875 F.3d at 857 ("At the interview stage, DeKelaita was able to ensure that applicants stuck to the script by bringing interpreters into the fold."). Whether or not the attorney co-conspirators were subject to discipline bears no conceivable relationship to the translators' participation in the conspiracy. As a result, even accepting DeKelaita's unsupported inference regarding the attorneys, his

claim that this would undermine the conspiracy charge would fall short.

For these reasons, the Court overrules DeKelaita's third claim.

## Conclusion

For the foregoing reasons, the Court grants an evidentiary hearing under 28 U.S.C. § 2255(b) regarding DeKelaita's first claim and overrules his second and third claims. The case is set for a status hearing on June 20, 2018 at 9:30 a.m. Mr. DeKelaita and counsel for the government are directed to appear.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 12, 2019